# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| ANASTASIA HOLUB, | ) | CASE NO. 1:16CV02130 |
|---|---|---|
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) | |
| SABER HEALTHCARE GROUP, LLC; RUDWICK HEALTHCARE, INC.; and DEBBIE CUMMINGS, | ) | OPINION AND ORDER |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter is before the Court on Defendant Saber Healthcare Group, LLC, *et al.*'s Motion for Summary Judgment (ECF No. 22) pursuant to Federal Rules of Civil Procedure 56(c) on Plaintiff's claims under R.C. § 4112 *et seq.*, 29 U.S.C. § 2615(a), and Intentional Infliction of Emotional Distress. For the following reasons, the Motion for Summary Judgment is granted in part and denied in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Anastasia Holub's First Amended Complaint was filed on August 25, 2016, against Defendants Saber Healthcare Group, LLC ("Saber"), Rudwick Healthcare, Inc. ("Rudwick"), and Debbie Cummings ("Cummings"). Plaintiff's First Amended Complaint alleges claims for sexual harassment/hostile work environment, gender discrimination, retaliation and wrongful termination based on gender discrimination in violation of R.C. § 4112 *et seq.*, retaliation in violation of 29 U.S.C. § 2615(a) (the Family Medical Leave Act ("FMLA")), and Intentional Infliction of Emotional Distress.

Plaintiff, a transgender female, was employed by Saber at two different facilities from 2011 until August 17, 2014, as a Licensed Practical Nurse ("LPN") and Charge Nurse (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J., 2) (ECF No. 24). Plaintiff was transferred to Rudwick, a Saber facility, after the previous facility at which she worked had closed. On two separate occasions, Plaintiff applied for, and was granted leave under the Family Medical Leave Act. (Pl. Am. Compl. ¶ 40). Plaintiff asserts that Rudwick employees, including Cummings, discouraged her from taking leave and made negative comments related to her leave. (Pl. Am. Compl. ¶¶ 38-39). Plaintiff also alleges that Rudwick employees, including Plaintiff's supervisors, insisted upon referring to Plaintiff as 'he', 'him' and 'mister.' (Pl. Am. Compl ¶¶ 16-17, 19). Plaintiff was terminated by Saber on August 25, 2014. (Pl. Am. Compl. ¶ 42).

On August 16, 2014, prior to Plaintiff's termination by Saber, one of Rudwick's residents became unresponsive. Plaintiff was informed by a coworker, Demetrius Glass ("Glass") of the situation and both Plaintiff and Glass proceeded to the resident's room. Plaintiff left to retrieve the resident's chart to determine if the resident had signed a "Do Not Resuscitate" ("DNR") order. While Plaintiff was retrieving the chart, Glass, a trained State Tested Nursing Assistant ("STNA"), began administering CPR. Plaintiff then called 911 after confirming that the patient did not have a DNR order and CPR was continued until additional medical personnel arrived.

## II. LAW AND ANALYSIS

**A. Legal Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to show that no genuine issue of material fact

exists, which may be demonstrated by "portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Inferences drawn "from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The court does not have the duty to search the entire record to establish that no genuine dispute as to any material fact exists. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (1989). The non-moving party must present affirmative evidence supporting a genuine dispute of fact in order to defeat a motion for summary judgment. *Id.* at 1479. If the non-moving party fails to establish the existence of an essential element of which it has the burden of proof at trial, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322-23. "[T]he inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

**B. Claims for Sexual Harassment, Gender Discrimination, Retaliation and Wrongful Termination Based on Gender Discrimination Under O.R.C. § 4112.01** *et seq.*

*1. Claim for Sexual Harassment*

Ohio Revised Code § 4112.02 provides that "[i]t shall be an unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause . . . or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." O.R.C. § 4112.02(A). The Ohio Supreme Court has stated that, in cases involving R.C. Chapter 4112, "trial courts

3

should apply Title VII federal case law to interpret issues in cases brought pursuant to [this chapter]." *Tarver v. Calex Corp.*, 708 N.E.2d 1041 (7th Dist. 1998); *see also Little Forest Medical Ctr. of Akron v. Ohio Civ. Rights Comm.*, 61 Ohio St.3d 607, 575 N.E.2d 1164 (1991). The Supreme Court of the United States has "established that Title VII's reference to 'sex' encompasses both the biological differences between men and women, and gender discrimination, that is, discrimination based on a failure to conform to stereotypical gender norms." *Smith v. City of Salem, Ohio*, 378 F.3d 566 (6th Cir. 2004) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)). Under *Price Waterhouse*, the analysis focuses on whether the individual in question failed "to conform to socially-constructed gender expectations." *Schwenk v. Hartford*, 204 F.3d 1187 (9th Cir. 2000). Discrimination based on a failure to conform to socially-constructed gender expectations, therefore, is proscribed by Title VII. *Id.* at 1202.

A claim for hostile-environment sexual harassment is only actionable if the plaintiff shows: "(1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment, and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." *Hampel v. Food Ingredients Specialities, Inc.*, 89 Ohio St.3d 169 (2000).

Defendant's argument in support of dismissal is that sexual orientation is not a protected class under Ohio law. Additionally, Defendant asserts that the Ohio Supreme Court has not addressed the issue of whether sexual orientation discrimination is actionable. (Def.'s Mot.

4

Summ. J. p. 9). However, this argument misses the mark because Plaintiff's claim is not brought under a theory of sexual orientation. Rather, Plaintiff argues that it is her transgender status which is at issue. (Holub Dep. 128: 8-15).

In this case, Plaintiff clearly did not welcome the harassment since she complained to her supervisors about it on several occasions and no corrective action or remedy was taken. (Holub Dep. 129-131). Informing her supervisors of the unwelcome harassment, coupled with a lack of any remedy, satisfies the first and fourth elements. Next, Plaintiff states that her left breast was grabbed by a coworker to 'see if [it] felt real.' (Holub Dep. 129:20-130:6). This incident satisfies the second element since this incident was based upon, and would not have happened but for, Plaintiff's gender. The third element is met if Plaintiff experienced conduct which was "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Hollar v. RJ Coffey Cup, LLC*, 505 F.Supp.2d 439, 448 (N.D. Ohio 2007). The totality of the circumstances must be considered. *Id.* at 448. The incident mentioned, wherein Plaintiff was grabbed in her left breast, was physically humiliating. Several instances of being referred to with male pronouns after Plaintiff's transition became common knowledge, having Cummings (a supervisor) make negative comments only with respect to Plaintiff and not cisgender nurses, and an incident in which Plaintiff was accused of engaging in sexual relations with a patient are additional examples of pervasiveness. (Holub Dep. 126-129). It is important to note that isolated incidences are insufficient to amount to sexual harassment. *Id.* at 448. However, the incidents described in Plaintiff's First Amended Complaint satisfy the third element of the claim, thus completing the prima facie case.

Defendant's Motion for Summary Judgment is denied on Plaintiff's claim for sexual

harassment.

## 2. *Claim for Gender Discrimination*

A prima facie case of employment discrimination may be established by the employee showing that (1) she was a member in a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) a comparable, non-protected person was treated more favorably or she was replaced by someone outside the protected class. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 385 (8th Dist.1997) (citing *McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1972)). See also *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004). Defendants do not dispute the first two elements. Regarding the third element, Plaintiff was employed by Saber and Rudwick at two different facilities as an LPN from 2011 until August 2014. (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J., 2) (ECF No. 24), which indicates that she was qualified for her position as an LPN. Regarding the fourth element, the record indicates that the only two Rudwick employees involved in the incident were Glass and Defendant. Plaintiff, being an LPN, is not similarly situated with Glass, an STNA, nor has Plaintiff presented evidence of past incidences where others outside the protected class were treated more favorably for similar conduct. Furthermore, Plaintiff cites the Court to no evidence demonstrating she was replaced by someone outside the protected class. As such, the fourth element has not been met, and Plaintiff has failed to establish a claim for gender discrimination.

Defendant's Motion for Summary Judgment is granted on Plaintiff's claim for gender discrimination.

## 3. *Claim for Retaliation*

A claim for retaliation requires a plaintiff to show that: "(1) she engaged in a protected

6

activity; (2) her employer knew she participated in the activity; (3) she suffered an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse action." *Smith v. Board of Trustees Lakeland Community College*, 746 F.Supp.2d 877, 900 (N.D. Ohio 2010). A protected activity includes complaining to management about allegedly unlawful practices. *Id.* at 900. Plaintiff meets the first two elements, having complained that she reported to management instances of alleged sexual harassment and gender discrimination. (Holub Dep. 126:7-11; 126:24-127:3). The third element is clearly met as well since it is undisputed that Plaintiff's employment was terminated. Plaintiff states that Cummings remarked that she "didn't know about that," when Plaintiff received a compliment from a patient regarding her skill as a nurse. (Holub Dep. 134:18-22). Plaintiff also alleges that she was discriminated against by Cummings in response to making complaints regarding the way she was being treated by her coworkers. (Holub Dep. 134:24-135:4). As such, genuine issues of material fact exist as to whether a causal connection exists between Plaintiff reporting to management and having her employment terminated.

Once a plaintiff "establishes a prima facie case of FMLA retaliation, "Establishment of the prima facie case in effect creates a presumption" that the employer retaliated against the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. "If Plaintiff establishes a prima facie case ... then the burden shifts to Defendants to articulate a legitimate, [nonretaliatory] reason for Plaintiff's discharge." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir.2000). Upon producing such a reason, "Plaintiff must ... demonstrate that the proffered reason was not the true reason for the employment action—i.e., that the reason was a mere pretext for" retaliation. *Id.* at 578–79.

7

Plaintiff's deposition testimony shows that she delegated care of a resident during a medical emergency to a CNA. (Holub Dep. 102-105). It was her delegation of nursing duties that resulted in her termination. (McCartney Dep. 53:20-23; McCartney Dep. 84:4-6; Cummings Dep. 62:22-25). Defendants have met their burden to establish a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

The burden then shifts back to Plaintiff to show that the proffered explanation is pretextual. *Dalton v. Jefferson Smurfit Corp. (U.S.)*, 979 F.Supp. 1187, 1200 (S.D. Ohio 1997). Pretext may be established by "showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012). Plaintiff's deposition testimony indicates that it is necessary to review a patient's chart to assess whether the patient would like to be resuscitated in the event of cardiac arrest. (Holub Dep. 94:6-95:5). Cummings' deposition transcript also indicates that STNA's are not qualified to read a patient's chart. (Cummings Dep. 83:11-12). Additionally, LPN's are qualified to read a patient's chart, which is located behind the nursing station, not in each patient's room. (Cummings Dep. 83:13-21). In other words, Plaintiff, as an LPN, was the only Rudwick employee present at the scene of the emergency in question qualified to determine whether the patient had a DNR. Glass, an STNA and the only other Rudwick employee in the room, was not qualified to read the chart. (Holub Dep. 104:8-12). As such, Plaintiff has offered evidence to show that Defendant's explanation is pretextual.

Defendant's Motion for Summary Judgment is denied on Plaintiff's claim for retaliation.

*4. Claim for Wrongful Termination Based on Gender Discrimination*

8

Ohio recognizes a claim for wrongful discharge in violation of public policy. *White v. Honda of America Mfg., Inc.*, 191 F.Supp.2d 933 (S.D. Ohio 2002) (citing *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (Ohio 1990). "The elements of a claim for wrongful discharge in violation of public policy are: (1) existence of a clear public policy; (2) dismissing the employee under circumstances jeopardizing the public policy; (3) dismissal motivated by conduct related to the public policy; and (4) lack of employer's overriding legitimate business justification." *Id.* at 952. Notably, the clarity and jeopardy elements are questions of law to be determined by the court, while causation and overriding justification are factual matters to be decided by the jury. *Id.* at 952.

Plaintiff has identified the source of public policy for her claim as O.R.C. Chapter 4112. Section 4112 proscribes discrimination against a person with respect to employment because of sex. Having identified the existence of a clear public policy, the first element of Plaintiff's claim has been met. However, as discussed *supra* section B.2, Plaintiff has not established a claim for gender discrimination. As such, this is not a scenario in which Ohio has recognized that dismissing employees under similar circumstances would jeopardize the identified public policy, since Plaintiff has not established gender discrimination. *Id.* at 954. Therefore, the second prong of the test has failed.

Defendant's Motion for Summary Judgment is granted on Plaintiff's claim for wrongful termination based on gender discrimination.

**C. Claim for Retaliation in Violation of the Family Medical Leave Act**

To establish a claim for retaliation under the Family Medical Leave Act ("FMLA"), one must show that: "(1) she engaged in a protected activity; (2) she suffered an adverse employment

9

action; and (3) there was a causal connection between the exercise of her rights under FMLA and the adverse employment action." *Flagg v. Staples the Office Superstore East, Inc.*, 138 F.Supp.3d 908, 917 (N.D. Ohio 2015). The parties agree that Plaintiff took protected FMLA leave and that she suffered an adverse employment action when her employment was terminated, leaving the only relevant inquiry being whether there existed a causal connection. In *Flagg*, the court stated that negative comments in reference to the frequency of leave were "sufficient evidence of retaliatory animus to support [a] prima facie burden on termination." *Id.* at 919. In this case, negative comments made by a superior related to Plaintiff's FMLA leave are sufficient to meet this burden. Specifically, Cumming's statement to Plaintiff that "[her] excuses weren't valid, that [she] could just call the doctor and get a doctor's excuse," and Cumming's anger toward Plaintiff for taking FMLA leave, are sufficient to meet the burden as discussed in *Flagg*. (Holub Dep. 142-144). Furthermore, the Sixth Circuit has held that termination which occurs within two to three months of the expiration of an employee's leave or when the employee requested leave is sufficient evidence of a causal connection. *Id.* at 918 (citing *Judge v. Landscape Forms, Inc.*, 592 Fed.Appx. 403, 409 (6th Cir. 2014)). In this case, Plaintiff's termination occurred on August 25, 2014. (Pl. Am. Compl. ¶ 42). Plaintiff's second FMLA leave was requested at the end of May 2014. (Holub Dep. 147) (ECF No. 20) (stating that Plaintiff had a signed doctor's note for May 30, 2014, which was used to apply for FMLA leave). Plaintiff's FMLA leave, therefore, occurred entirely within the window of time that the Sixth Circuit has held establishes a causal connection between the leave taken and the adverse employment action.

Once an employee establishes a prima facie case of retaliation under FMLA, the burden

shifts to the defendant to establish a legitimate, non-discriminatory reason for its action. *Flagg*, 138 F.Supp.3d at 919. Defendant maintains that Plaintiff was terminated from her position because of an improper delegation of her duty to an STNA. Defendant asserts that, as an LPN, Plaintiff's delegation to an STNA was in direct violation of Rudwick's nursing policy and procedure, constituting a legitimate, non-discriminatory reason for termination. (Def.'s M. Summ. J. p. 12). Thus, Defendant has satisfied its burden of demonstrating a legitimate, non-discriminatory reason for the termination.

The burden then shifts back to Plaintiff to show that Defendant's proffered explanation is a pretext for discrimination. *Seeger*, 681 F.3d at 285. "A plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Id.* at 285. Evidence that the termination was pretextual because Plaintiff was the only Rudwick employee at the scene of the medical emergency capable of determining if the patient had a DNR, is discussed *supra* Section B.4. The same reasoning applies to this analysis. Plaintiff has presented evidence sufficient to constitute a genuine dispute as to material issues of fact relating to whether the employer's proffered reasons actually motivated the action.

Defendant's Motion for Summary Judgment is denied on Plaintiff's FMLA retaliation claim.

**D. Claim for Intentional Infliction of Emotional Distress**

In order for Plaintiff to sustain her claim for Intentional Infliction of Emotional Distress, she must show that: "(1) the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to the plaintiff; (2)

the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it could be considered 'utterly intolerable in a civilized community;' (3) the actor's actions were the proximate cause of plaintiff's psychological injury; and (4) the mental anguish suffered by the plaintiff was serious and of such a nature that no reasonable man could be expected to endure it." *Buckman-Peirson v. Brannon*, 822 N.E.2d 830, 835 (2nd Dist. 2004). The Supreme Court of Ohio has stated that liability will not be imposed for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America*, 6 Ohio St.3d 369, 375, 453 N.E.2d 666, 671 (1983). The deposition testimony indicates that Plaintiff's medication dosage increased following her termination. (Holub Dep. 138:5-11). However, in order for a claim for intentional infliction of emotional distress to get past summary judgment, a plaintiff must present some evidence other than her own testimony. *Buckman-Pierson*, 822 N.E.2d at 840. Plaintiff has failed to do so. There is also no evidence to support conduct which is "so extreme and outrageous as to go beyond all possible bounds of decency." Nor is there evidence to suggest that any mental anguish suffered by Plaintiff was caused by the Defendant.

Defendant's Motion for Summary Judgment is granted on Plaintiff's claim for Intentional Infliction of Emotional Distress.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted on Plaintiff's claims for Gender Discrimination and Wrongful Termination based on Gender Discrimination under O.R.C. § 4112 and Intentional Infliction of Emotional Distress. Defendant's Motion is denied on Plaintiff's claims for Sexual Harassment/ Hostile Work

Environment and Retaliation brought under O.R.C. § 4112 and 29 U.S.C. § 2615(a).

IT IS SO ORDERED.

/s/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge